Weldon, J.,
delivered the opinion of the court:
The attorneys of record have filed a waiver of all claim for fees, in order, as we presume, to adjust the measure of their compensation either upon the basis of a contract already made or upon one to be made after the rendition of the judgment.
The court in a few cases has, upon a waiver of a claim for fees upon the part of the attorney, given judgments for the whole amount to the claimant; but since the rendition of the last judgment in that form the court has reconsidered the subject of fees as affected by the provisions of the act of 1891, and has reached the conclusion announced in this opinion.
The act provides in substance that all contracts heretofore made for fees and allowances to claimants’ attorneys are declared void; that all warrants issued by the Secretary of the Treasury in payment of judgments shall be made payable and delivered only to the claimant, or his lawful heirs, executors, or administrators, or transferees under administrative proceedings, except so much thereof as shall be allowed the claimant’s' attorney by the court for prosecuting the claim, which may be paid direct to such attorney; and the allowance to the claimant’s attorney shall be regulated and fixed by the court at the time of rendering judgment in each ease and entered of record as part of the findings thereof; but in no case shall the allowance exceed 15 per cent, unless in special cases specified by the statute.
Ordinarily the law leaves the subject of fees to be regulated by the parties — the client and attorney; but to that general rule there are some notable exceptions. In judicial proceedings affecting partition of land between coparceners, the usual practice of common-law courts regulated by statute is to fix the compensation of attorneys engaged in the partition; and in pension cases the fee of the attorney is fixed by statute, with heavy penalties for a violation of the law. (Supp. to Rev. Stat., vol. 1, 2d ed., p. 451.)
*203 The act of 1891 contemplates a judicial finding and judgment upon the subject of allowance of fees by providing “ that the allowance of attorneys’ fees shall be regulated and fixed by the court at the time of rendering judgment in each case, and entered of record as part of the findings.”
Congress, by the terms of the statute, seems to have discriminated between the interests of claimant and attorney by specifically providing that the court shall, in the adjudication of the cause, settle by separate finding the rights of each, as in some of the States counsel fees are regarded as a part of the judgment of the court and are to be settled by the finding as one of the questions incident to the litigation.
The ninth section of the act provides that “ all contracts heretofore made for fees and allowances to claimants’ attorneys are hereby declared void.”
The direct effect of that provision of the law is to supersede the existence and legal effect of all contracts, by declaring them void, and by the transfer of all power over the subject of fees to the jurisdiction and control of the court.
The policy of the statute seems to be to give to the court, and not to the parties, the right to settle the measure of compensation to the attorney; and for that purpose the law indicates by express provision the limits of compensation which by the judgment of the court shall be awarded to the attorney.
The fact that Congress has declared all existing contracts void is a very strong argument in favor of the theory that they intended that the court should in all cases settle the question of professional compensation, not leaving it either to contracts already in existence nor to such agreements as might be made between claimant and attorney after the rendition of the judgment.
In the early litigation incident to the Indian depredation act a question arose as to the right of attorneys to conduct and manage the suit of the same client, where both had been employed and where each had brought separate suits for the same cause of action. In the settlement of tlie controversy as to which was entitled to proceed and the rights of the retiring attorney, the court, by the late Chief Justice said: “The statute provided that the allowance to the claimant’s attorney shall be regulated and fixed by the court at the time *204 of rendering tbe judgment in each case and entered of record as part of tbe findings thereof; but in no case shall the allowance exceed 15 per cent of the judgment recovered, except in cases of claims less than $500, or where unusual services have been rendered or expenses incurred by the claimant’s attorney, in which case not to exceed 20 per cent of such judgment shall be allowed by the court. (1 Supp. to Rev. Stat., 2d ed., p. 916.) This we regard as like the taxable costs in actions at common law which the parties can not fix by contract.” (R. S., § § 823, 824; Redfield v. United States, 27 C. Cls. R., 481.)
It is true the question of the right of the attorney to waive his fees was not before the court in that proceeding; but the court, as incident to the question of fees, gave construction to the act upon the subject of fees generally, and in that construction indicated very clearly the legal effect of the law upon the rights of the attorney and client on the subject of fees. In the very recent case of Ball v. Halsell (161 U. S., 72), coming from the Circuit Court of the United States of the northern district of Texas, the Supreme Court has in a very elaborate opinion in effect passed upon the question presented by the record iu this proceeding.
In that case an action was brought by the plaintiff, Ball, against the defendant Halsell, who was the executor of J. G. Halsell, upon a written contract, the substance of which is that the decedent appointed the plaintiff his attorney to prosecute claims against the United States on account of depredations of the Comanche and Kiowa Indians upon the property of the decedent, in consideration of which the plaintiff was to retain 50 per cent of all moneys recovered because of such depredations. The agreement bore date on the 25th of May, 1874. Under that power of attorney the plaintiff presented the claim to the Department of the Interior, upon which an allowance of $19,625 was made. No appropriation was made by Congress to pay the sum awarded. On the 6th of March, 1891, suit was brought by Ball, as attorney, under the act of March 3, 1891, and the sum of $17,720 was recovered, on which the court made au allowance of $1,500 to Ball as attorney’s'fees. The United States paid this sum to Ball and the balance to the executor of Halsell. Ball then brought suit in the Circuit Court of the United States for the 50.per cent of the judgment, less the sum of $1,500 paid under the judgment of the court.
*205 In tbe defense tbe defendants relied on tbe action of tbe Court of Claims in allowing compensation to tbe plaintiff at $1,500 and tbe iiayment of tbe same. Upon tbe facts tlie Circuit Court came to tbe following conclusion of law: “ Tbe court being of tbe opinion that tbe said contract is rendered nugatory and tbe provisions therein made for compensation for said attorney, Thomas Ball, is superseded by tbe ninth section of tbe act of March 3,1891, and being of tbe opinion that said contract is not enforceable, and that tbe said statute above referred to fixes and provides for all tbe compensation which tbe attorneys prosecuting claims under said act are entitled to receive, judgment is rendered for tbe defendant.”
Tbe plaintiff being dissatisfied with tbe judgment, prosecuted a writ of error to tbe Supreme Court, and tbe Supreme Court in a very elaborate and able opinion by Mr. Justice Gray affirmed the judgment of tbe Circuit Court.
After the discussion of tbe question whether under former statutes it was lawful for parties to contract for contingent fees, and bolding that such contracts were not unlawful, tbe decision cites many cases in which tire court decided that contingent fees were not in violation of law or against public policy. (Wylie v. Coxe (1853), 15 Howard, 416; Wright v. Tebbits (1875), 91 U. S., 252; Stanton v. Embry (1876), 93 U. S., 548; Taylor v. Bemiss (1883), 110 U. S., 42.) “But,” the opinion continues, “Congress lias evidently considered that in some cases, at least, to permit contracts to. be made-for tbe payment to attorneys, by way of contingent fee, of a large proportion of the amount to be recovered, is in danger of leading to extortion and oppression.”
It was apparently owing to such considerations that Congress, in the Act of March 3, 1891 (cb. 538), when conferring upon tbe Court of Claims jurisdiction of claims arising from Indian depredations, including such claims as bad been examined and allowed by the Department of Interior, and providing that judgments of that court, unless reversed or modified on rehearing or appeal, should “be a final determination of tbe causes decided, and of tbe rights and obligations of tbe parties thereto,” enacted, in section 9, that “ all sales, transfers, or assignments of any such claims, heretofore or hereafter made, except such as have occurred in tbe due administration of decedents’ estates, and all contracts heretofore made for *206 fees and allowances to claimant’s attorneys, are hereby declared void, and all warrants issued by the Secretary of the Treasury in payment of such judgments shall be made payable and delivered only to the claimant or his lawful heirs, executors, or administrators, or transferees under administrative proceedings, except so much thereof as shall be allowed the claimant’s attorneys by the court for prosecuting said claim, which may be paid direct to such attorneys; and the allowance to the claimant’s attorneys shall be regulated and fixed by the court at the time of rendering judgment in each case, and entered of record as part of the findings thereof; but in no case shall the allowance exceed 15 per cent of the judgment recovered, except in case of claims of less amount than $500, or where unusual services have been rendered or expenses incurred by the claimant’s attorney, in. which not to exceed 20 jier cent.
In view of previous experience, this last provision was a wise, reasonable, and just provision for the protection of suitors, and it was clearly within the constitutional power of Congress.
As was said by Chief Justice Taney:
“It is an established principle of jurisprudence, in all civilized nations, that the sovereign can not be sued in its own courts, or in any other, without its consent and permission; but it may, if it thinks proper, waive this privilege, and permit itself to be made a defendant in a suit by individuals, or by another State. And as this permission is altogether voluntary on the part of the sovereignty, it follows that it may prescribe the terms and conditions on which it consents to be sued, and the manner in which the suit shall be conducted, and may withdraw its consent whenever it may suppose that justice to the public requires it.” (Beers v. Arkansas, 20 How., 527, 529; In re Ayres. 123 U. S., 443, 505: Hans v. Louisiana, 134 U. S., 1, 17.)
Speaking of the statute of 1891, the court says:
“The act did not recognize either the lawfulness or the amount of the claim or make any appropriation for its payment, but it provided for its ascertainment and adjudication by judicial proceedings, and for the allowance, by the judgment of those proceedings, of a reasonable compensation to the attorney. The restriction of the compensation of attorneys to the amounts so allowed by the court was one of the terms and conditions upon which the United States consented to be sued.”
*207 As lias been said, the statute also provides that “ all warrants issued by the Secretary of the Treasury in the payment of such judgments shall be made payable and delivered to the claimant or his lawful heirs, executors, or administrators, or transferees under administrative proceedings, except so much as shall be allowed claimant’s attorneys.” The rights of the claimant and attorney are dealt with separately and recognized as separate entities by every provision of the law where they are made the subject of recognition.
The law having provided that all existing contracts should be void, it would be unreasonable to assume that Congress intended that the parties should still be clothed with the power either to affirm the old agreements or make new ones in violation, it might be, of what Congress regarded as a reasonable compensation within the discretion of the court, circumscribed by the limits of the law. It is the opinion of the court that we are compelled, as a matter of law, to fix the fees of the attorney in each case, irrespective of the waiver of the attorney, unless it is shown to the satisfaction of the court that no fee is to be charged, when the whole amount will be awarded to the claimant.