### THE EDWARD H. BLAKE.

(Circuit Court of Appeals, Fifth Circuit. J........y 31, 1899.)

No. 753.

**1. APPEALS IN ADMIRALTY—RECORD—TRANSCRIPT OF EVIDENCE.**

A transcript of appeal in admiralty should contain all the evidence adduced on both sides. When such evidence is not reduced to writing in the lower court, and there is no rule of that court requiring it to be reduced to writing, it would seem that an appeal can only be heard on the merits, where the evidence adduced appears by an agreed statement of facts, or where a statement is made by the court of the evidence adduced, or of the facts proved.[1]

**2. SHIPPING—CONSTRUCTION OF CHARTER PARTY—AUTHORITY OF MASTER.**

While a master has no power to set aside the contract made by the charter party, yet where, at the time of loading, questions arise between the ship and the charterer as to the proper construction of minor clauses in the contract, in the absence of the owners, the master, as their agent, must necessarily deal with the same, and his construction and agreements in relation thereto are binding on the owners.

Appeal from the District Court of the United States for the Eastern District of Texas.

This is an appeal from a final decree of the district court for the Eastern district of Texas, entered June 9, 1897, adjudging that the libelant (appellee herein) is not entitled to recover as prayed for, and that its libel be dismissed; and, further, that respondents (appellants herein) are not entitled to recover upon their cross libel, and each party should pay all costs herein. The libel was filed May 7, 1897, by the Reliance Lumber Company. It alleged that on the 1st day of April, 1897, it chartered the schooner Edward H. Blake to carry a cargo of "resawed yellow pine lumber and boards and ties, and a small quantity of oak ties (it is understood that the oak ties are white oak, and weigh about the same as pine)," and transport the same from Sabine Pass, Tex., to Vera Cruz, Mexico; freight to be $5.50 per 1,000 feet for pine lumber and oak ties, and $5.25 per 1,000 feet for pine ties. The charter party or contract of affreightment further provided that libelant (charterer) would not be obliged to commence loading the vessel before April 15, 1897,—lay days for loading and discharging to commence from the time the vessel is ready to receive or discharge cargo, at least 25,000 feet per running day, Sundays and legal holidays excepted; that for each and every day detention by default of charterer or agent it should pay the owners of said schooner or their agents $50 per day, from day to day; that said cargo should be delivered by libelant and received by libelees within the reach of vessel's tackle; that, in pursuance of the charter, said schooner was at Sabine Pass, Tex., and ready to receive cargo, on the morning of April 15, 1897, and that libelant then proceeded to furnish cargo in strict compliance of the charter party; that on or about the 1st day of May, 1897, James H. Smith, the master, refused to receive or load the lumber tendered to said vessel by libelant, and protested against receiving the lumber tendered, because the oak ties furnished were of weight more than 40,000 pounds in excess of what would have been the weight of a like number of pine ties; that the oak ties were of weight one ton to the 1,000 feet in excess of pine, and that said vessel's carrying capacity would, by reason thereof, be 40,000 feet less than that of pine ties; that there-

---

[1] As to admiralty appeals in general, see note to The Venezuela, 3 C. C. A. 322.

after, by way of compromise, the parties then agreed with each other that the term "small quantity of oak ties," as used in said charter party, should mean 50,000 feet of oak ties, and that libelant should be permitted to load on said vessel any amount of oak ties in excess of the 50,000 feet that it desired by paying additional freight of 50 cents per 1,000 feet; that said schooner continued to receive and load such lumber and oak ties as were furnished by libelant until about the 6th day of May, 1897, when libelant tendered three cars of white oak ties, aggregating about 25,000 feet; that libelant then and there ignored said charter contract and agreement, and, in gross violation thereof, again presented protests, and refused to load said three cars of white oak ties, aggregating 25,000 feet; that libelant well and truly performed and kept all the covenants, etc., on its part in said charter party to be performed, but that neither the said James H. Smith, nor said vessel or owners, have performed therein their covenants in said charter party by them to be performed and kept, but have failed and refused to keep the same in the receiving and loading said three cars of oak ties; that libelant is damaged $2,000, and prays for admiralty process against the vessel, and that the court construe the charter party. On June 7, 1898, libelant filed its amended libel, setting up same facts as original libel, and attached thereto copy of charter party, and copies of three protests served upon it by respondents; one executed on May 1, 1897, and served upon it, wherein the master protested that he was not being loaded as per charter party, and that he would not receive said three cars of oak ties unless allowed extra freight to cover differences in weight between it and pine. Another protest, executed on the 8th day of May, 1897, wherein the master protested at the way his vessel was being loaded, as being not in compliance with the terms of the charter party, and affirming that, if forced to receive said oak after this, his solemn protest, he would hold the Reliance Lumber Company bound to pay all shortage in freight, which affiant alleged would be at least $275, as well as all demurrage and other damages in addition thereto. On May 14, 1897, respondents executed and filed another protest, affirming to hold libelant responsible for all shortage in freight by reason of not being loaded as per charter party, and also for demurrage.

Respondents (appellants herein) on May 20, 1897, filed a paper denominated "exception, answer, and cross libel," admitting the execution of the charter party, and alleging, as per terms of same: That the schooner Edward H. Blake reported at Sabine Pass at 7 a. m., April 15, 1897, in writing, that she was ready to receive cargo as per charter party. That thereupon the charterers and the agents began loading said vessel, but, instead of loading "resawed yellow pine lumber and boards and ties, and a small quantity of oak ties, about the same weight as pine," as was stipulated for in the charter party, libelant, over respondents' solemn protest, loaded upon said schooner large quantities of green oak ties and oak lumber, to wit, more than 75,000 feet, which weighed more than one-half more than the same number of feet of pine, by reason of which said schooner was loaded down so that she was drawing more than 15 feet 2 inches aft and 13 feet 6 inches forward, with her holds full, which showed an increase of 80 long tons in weight over what said schooner would have had in her hold if she had been loaded as was stipulated in said charter party. Respondents attached to and make part of their answer affidavits certifying to weight of oak tendered and loaded, averaging 6⅝ pounds to the foot, board measure. That, after loading said 75,000 feet of oak ties, libelant further tendered respondents three additional cars of oak ties and oak lumber, which respondents protested against receiving. Libelant then notified respondents that no other lumber would be furnished said schooner until said three cars were loaded. Respondents then permitted said three cars to be loaded after protest and notifying said libelant that it would be held responsible for all damages by reason of the loss of freight and demurrage sustained by said schooner by reason thereof. That, after said schooner was loaded under protest, as hereinbefore set forth, libelant failed and refused to furnish respondents invoices, so that they could clear, and go to sea, until the 15th day of May, 1897. Respondents signed the bill of lading with protest attached, to the effect that the invoices which respondents were required to sign, and which they did sign under protest,

did not reflect the kind and quality of lumber composing the cargo of said schooner Edward H. Blake. That by reason of the premises, respondents were damaged in the sum of $1,300, for which they ask judgment, as well as for such other and further relief as they may be entitled to in the premises. On June 7, 1898, respondents filed a so-called amended cross libel in answer to libelant's amended libel, and specially deny the allegation contained in paragraph 4 in libelant's amendment to its libel, and allege the facts to be as follows: That, as a result of the protest made by Capt. Smith, of the schooner Edward H. Blake, about receiving the oak lumber that was being tendered to him under the charter party, W. A. Priddie, agent of libelant, on or about April 20, 1897, came on board the schooner Edward H. Blake, and alleged that he only had about 65,000 feet of oak to ship, and that. if respondents would take said amount, libelant would send down to said vessel at once 80,000 feet of kiln-dried and dressed lumber, which would more than counterbalance the extra weight of oak; that said dried pine lumber would be delivered at once; that the Blake would then have quick dispatch, and get to sea in five or six days from date of said agreement. And that, relying upon said promise of libelant, and in consideration of the shipment of said dried pine as promised, said Smith, as master, agreed to take the 65,000 feet of oak as offered, but that, notwithstanding said promise on the part of libelant, it wholly failed and refused to comply with the same, or any part thereof. That it did not ship, or tender to respondents for shipment, any dried pine lumber; and that, instead of said schooner being given quick dispatch five or six days from said agreement, respondents did not get to sea until the 14th day of May, 1897, which was 24 days thereafter. That, by reason of the failure of the libelant to comply with the charter party, respondents received less freight by $550 for said trip than they would have received had the terms of said charter party been complied with by said libelant; and, further, that by reason of delay in getting to sea, respondents are entitled to 9¾ days of demurrage under the terms of said charter party at $50 per day, or $487.50. That by reason of the breach of said charter party by libelant respondents were put to great expense in employing attorneys, having protests prepared, etc., to the amount of $700. Wherefore respondents prayed for judgment for said amounts aforesaid, for interest and costs, and for such further relief as they may be entitled to in the premises.

W. B. Denson and F. W. Fickett, for appellants.

Harry H. Hall and Geo. C. O'Brien, for appellee.

Before PARDEE and McCORMICK, Circuit Judges, and PARLANGE, District Judge.

PARDEE, Circuit Judge (after stating the facts as above). This case being regularly called, the appellee submitted a motion to dismiss the appeal on the following grounds:

"That a material part of the evidence adduced by the claimant in the district court was not reduced to writing; that none of the testimony of appellee's witnesses heard by the district judge was reduced to writing; that none of this testimony is included in the transcript of appeal herein; that no notes of the same were taken; that no stipulation was made by the respective proctors to omit or dispense with said testimony; that the issue involved in this cause is one of fact, which was determined in the district court solely upon this omitted oral testimony, and could not be determined by this court without the same; that there is no rule of the said district court making it indispensable to reduce such to writing; and that there is no issue of law raised herein which is independent of the facts established by said omitted testimony, and which could be passed upon by the court without first determining said facts."

The proctors for the appellants, not disputing the facts contained in the motion, contended it should not be granted, because the real facts in the case, as shown by the testimony of the appellants' wit-

nesses, were embodied in the transcript. The proctors further contended that the questions they desired to have considered upon this appeal were wholly questions of law, not dependent in any respect upon the evidence adduced in the court below; and thereupon admitted and consented that, for the purposes of this appeal, the facts in the case might be taken to be as set forth and declared in the libel, the amended libel, and the answer to the cross libel.

A transcript of appeal in admiralty should contain all the evidence adduced upon both sides. See Admiralty Rules Sup. Ct. No. 52; Rule 14 of this court (31 C. C. A. xci.). When such evidence is not reduced to writing in the lower court, and there is no rule of the lower court requiring it to be reduced to writing, it would seem that an appeal can only be heard upon the merits, where the evidence adduced appears by an agreed statement of facts, or where a statement is made by the court of the evidence adduced or of the facts proved. A similar question was passed upon in The Glide, 18 C. C. A. 504, 72 Fed. 200, decided in the Fourth circuit. The court said:

"The next ground for the motion is that the record does not contain any of the evidence taken at the trial in the district court. This is strictly correct. The affidavits taken by the respondent, after the trial, of what the witnesses say they testified at the trial, are in no sense evidence taken at the trial. We fully concur with the district judge that there is no law or practice which would justify him in granting the certificate asked by proctors for the claimant. The rule 14 of this court [31 C. C. A. xci.] (clause 6) requires that the record in cases of admiralty and maritime jurisdiction shall be made up as provided in general admiralty rule No. 52 of the supreme court. This rule No. 52 requires that the record shall contain the testimony upon the part of the libelant and the testimony on the part of the defendant, unless the parties agree, by their proctors, by written stipulation, that it may be omitted. There is no such stipulation here. Clearly, the record is incomplete. This court cannot pass on the merits of the case. Nor, in the absence of a stipulation by counsel, is it possible to supply the omission. We must have the evidence taken at the trial. It is impossible to obtain this. The judge who tried the case cannot recall it. The proctor for claimant is unable to furnish it in such shape as will meet the approval of the other side. Nor can it be imputed as a fault to any one that this evidence is not forthcoming. There is no rule or practice in this district court requiring the reduction to writing of evidence used at the trial. Yet, without such evidence, great injustice may be done. If the appeal be dismissed on this ground, then the claimant will bear all the results of an omission for which he is not responsible. If we go on, and hear the appeal, the appellee will be put at a great disadvantage, guiltless as he is of any default. This is an anomalous condition of things. But in a court of justice there should be no default of justice if it can by any possibility be prevented. It has been suggested that the case should be tried here de novo. We concur with the court of appeals in the Second circuit in The Havilah, 1 C. C. A. 77, 48 Fed. 684, and 1 U. S. App. 17, and with the circuit court of appeals of the First circuit in The Philadelphian, 9 C. C. A. 54, 60 Fed. 424, that this court can, by the practice in admiralty, hear this case de novo. But this practice is one to be used cautiously, and in cases of extreme necessity. Besides this, there is much force in the objection taken in The Philadelphian, supra: 'In any case in which all the proofs are not reduced to writing in the district court, and no equivalent is found in the record, we have no power except to decline to try the facts anew.'"

The counsel for appellants contend that the real questions involved in this case are questions of law only, to wit, what is the construction of the clause of the charter party which provides, as a part of the cargo, for "a small quantity of oak ties"? and that the compromise

referred to in the libel as made between the captain of the Edward H. Blake and the Reliance Lumber Company to the effect that the term "small quantity of oak ties," as used in the charter party, should mean 50,000 feet of oak ties, and that the libelant should be permitted to load on said vessel oak ties in excess of 50,000 feet by paying an additional freight of 50 cents per 1,000 feet, was absolutely null and void, because beyond the power of the master. It may well be that the construction of the provision that part of the cargo may be "a small quantity of oak ties" is a legal question, which, under proper circumstances, should be decided by the court, in connection with other provisions of the charter party; but if there was a valid compromise made in regard to the matter, by which the parties themselves construed the provision and determined its meaning, there would be no occasion for the court to pass upon the matter beyond the proof as to what was compromised. It may be conceded, as a general proposition, that the master of a vessel has no right to set aside, annul, or supersede the specific contracts made by the owner. At the same time it is clear that where, in the absence of the owners in the execution of a charter party, questions are raised between the ship and the charterers as to the proper construction of minor clauses in the charter party, the master, as agent of the owners, necessarily must deal with the same, and his construction and agreements in relation thereto must be binding upon the owner. And this seems to be the case presented here. In executing the charter party, the shippers and the captain were at loggerheads as to the exact quantity of oak ties the ship was to receive under the indefinite and ambiguous expression, "a small quantity of oak ties." The loading of the ship was delayed; both parties had interests at risk; and we are clear it was in the power of the captain, acting in good faith, and without fraud, to settle and adjust the matter. On the facts of this case, taken to be as averred in the libel and amendment thereto, it is clear that the Reliance Lumber Company was without any fault which made it liable for demurrage, or for loss of freight.

The case proceeded in the court below, and this appeal has been sued out, upon the theory that the appellants had instituted and prosecuted a cross libel. The rule is well settled that in admiralty the respondent may set up and prove and recoup for matters growing out of the same cause of action as is set up in the libel, and by averments in the answer may avail himself of all such matters to the extent of defeating the libelant's demands; but it is also well settled that, if the respondent desires affirmative relief beyond defeating the libel, and a decree over against the libelant, he must, besides answering the case made by the libel, file a cross libel, by which we understand an independent proceeding with the formalities attendant upon an original libel. See authorities cited in 1 Enc. Pl. & Prac. pp. 272, 273. We notice the matter here, not because it affects the decision of this appeal, but to avoid the citing of our decision as an admission that a prayer for decree at the end of an answer to a libel can be considered under any circumstances as the bringing of a cross libel. From the record before us we are of opinion that the district court properly decided the issues presented, and the decree appealed from is affirmed.