NORTHWESTERN S. S. CO., Limited, v. COCHRAN.

(Circuit Court of Appeals, Ninth Circuit. October 2, 1911.)

No. 1,879.

1. TRIAL (§ 250*)—INSTRUCTIONS—CONFORMITY TO ISSUES AND EVIDENCE.
     An instruction considered, and *held* applicable to the issues and evidence in the case.
     [Ed. Note.—For other cases, see Trial, Dec. Dig. § 250.*]

2. SHIPPING (§ 62*)—MASTER—AUTHORITY AS AGENT FOR OWNERS.
     The master of a vessel is the general agent of the owners for all purposes connected with the ordinary employment of the vessel during the voyage, and as such has power to bind them to payment for services in discharging cargo.
     [Ed. Note.—For other cases, see Shipping, Dec. Dig. § 62.*]

3. WORK AND LABOR (§ 29*)—SERVICES RENDERED UNDER IMPLIED CONTRACT—AMOUNT OF RECOVERY.
     Where passengers on a vessel on a voyage from Nome to a Siberian port, where there was no labor available for discharging the vessel, were

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

required by the master to discharge the cargo, in an action to recover for their services, it was not error to instruct that, in estimating the reasonable value of their services, the jury might take into consideration the ordinary wages paid for such labor at Nome, which was the nearest port where such labor was available, and also the cost of transportation from there, and the increased cost of living at the place where the labor was performed.

[Ed. Note.—For other cases, see Work and Labor, Dec. Dig. § 29.*]

4. APPEAL AND ERROR (§ 174*)—OBJECTIONS—WANT OF INTEREST—WAIVER.

The objection that plaintiff is not the real party in interest, and hence has no right to sue, comes too late when made for the first time in the appellate court.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1121-1132; Dec. Dig. § 174.*]

5. CHAMPERTY AND MAINTENANCE (§ 5*)—LEGALITY OF CONTRACTS—CONTRACT WITH ATTORNEY FOR CONTINGENT FEE.

An assignment by the owners of a number of claims against the same party to an attorney under an agreement that he shall receive a certain percentage of the amount collected thereon for his services is not champertous, where there is no agreement that he shall pay the costs of the litigation, and will support an action by the assignee in his own name.

[Ed. Note.—For other cases, see Champerty and Maintenance, Cent. Dig. §§ 24-51: Dec. Dig. § 5.*]

Hanford, District Judge, dissenting.

In Error to the District Court of the United States for the Second Division of the District of Alaska.

Action at law by O. D. Cochran against the Northwestern Steamship Company, Limited. Judgment for plaintiff, and defendant brings error. Affirmed.

Charles P. Spooner, Dudley Du Bose, T. M. Clowes, George B. Grigsby, Ira D. Orton, W. H. Bogle, F. T. Merritt, and Lawrence Bogle, for plaintiff in error.

Albert Fink, for defendant in error.

Before GILBERT and ROSS, Circuit Judges, and HANFORD, District Judge.

GILBERT, Circuit Judge. The defendant in error, as the assignee of a number of persons who had claims against the plaintiff in error for labor which they had performed in discharging the cargo of the steamship Pennsylvania at Anadir, in Siberia, brought an action in the court below to recover judgment upon the said demands. The assignors of the causes of action had been engaged to go to Siberia as prospectors in the interest of a corporation which had received a concession from the Russian government. They went on the Pennsylvania from Nome, Alaska, taking with them their necessary outfits. They paid full fare as first-class cabin passengers, and they paid freight on their goods. There was evidence that on arriving at Russia Spit, a point two miles from Anadir, the captain of the steamship compelled them to perform the labor of discharging the ship's cargo by threatening to put them ashore, and to carry their outfits back to Nome unless they did so, and that they said they would take the stuff off pro-

vided they got something for it, to which the captain replied that they would have to settle that with the steamship company. The ship's cargo, only about a fourth of which belonged to the plaintiff's assignors, was dumped in a heap on a low spit extending seaward, and it was necessary to move the property immediately a distance of more than a mile. This the prospectors were compelled to do. The plaintiff in his complaint alleged that each of his assignors performed work and labor for the plaintiff in error at its special instance and request, and alleged the reasonable value thereof, which he averred had not been paid, though demanded. The answer denied the material allegations as to work and labor done, and alleged that each of the prospectors knew there would be no laborers at Anadir to lighter the steamship on her arrival, and that it was distinctly understood that they were to aid in discharging the cargo free of charge, and that the services so to be performed by them were to be part payment for their transportation. Upon the issues the jury found a verdict for the defendant in error, and judgment was entered thereon.

Errors are assigned to certain rulings of the court in admitting testimony; but, as no exception was taken thereto on the trial, those assignments cannot be considered here.

[1] It is contended that the court erred in instructing the jury, in substance, that if they found that upon arriving at a point approximately two miles from Anadir the captain of the steamer required the plaintiff's assignors to convey the cargo from ship's tackle to Anadir, and that, upon being informed by them that they expected to be paid for their services in lightering the cargo, the captain failed expressly to repudiate on behalf of the plaintiff in error any liability for such work, and that the said plaintiff's assignors proceeded to lighter the cargo, and that they had entered into no agreement at Nome whereby they were to do this, and that the work was a benefit to the plaintiff in error, then that they must find for the plaintiff for the reasonable value of the services so rendered. The objection taken to this instruction was that it eliminated from the consideration of the jury that there was an agreement made just before the work was done, and that it puts the burden on the defendant in the action to prove the implied contract sued on, and for the reason that it is not justified by the evidence in the case. But we find evidence in the case tending to establish all the elements of the charge, and while there was evidence tending to show an agreement made at Nome, which, if true, would excuse the steamship from liability, the jury were instructed to find for the plaintiff only upon the condition that they found that no such agreement had been made. We find no evidence that an agreement was made at the time of the unloading.

[2] Exception was taken to subsequent instructions which embraced in different language the charge just referred to. It is contended that there was eliminated therefrom the question whether the captain had the power as agent of the plaintiff in error to make such a contract, but there can be no question that the captain was clothed with such authority, for he was the general agent of the owners for all purposes connected with the ordinary employment of the vessel during the voy-

age. The Edward H. Blake, 92 Fed. 202, 34 C. C. A. 297; The Cervantes (D. C.) 135 Fed. 573; Dampskibsacticsselskabet Urania v. Barber & Co. (D. C.) 175 Fed. 989.

[3] It is contended that the court erred in instructing the jury that in estimating the reasonable value of the services performed they might take into consideration the ordinary wages paid for similar services at Nome, the nearest point where such labor was available, along with the cost of transportation, and the increased cost of living at the point where the labor was to be performed, and that, if they should find that there was such increased cost of living, they might take into account the available supply of labor at the place where the labor was performed. The question before the jury was the reasonable value of the work done. No substantial reason is suggested why the measure of damages adopted by the court in the instructions constitutes error for which the judgment should be reversed. There was little, if any, available labor at Anadir. If the steamship had been required to carry out its agreement with the plaintiff's assignors, as the jury found that agreement to be, it would have been required to take longshoremen from Nome to Anadir, and undoubtedly would have been obliged to pay an enhanced cost therefor by reason of the cost of transportation and the increased cost of living.

[4] The defense that the plaintiff was not the real party in interest was not made in the pleadings, nor was it suggested in the court below. The objection "that plaintiff is not the real party in interest, and hence has no right to sue, comes too late when made for the first time in the appellate court." 2 Cyc. 686; Irish v. Sharp, 89 Ill. 261; Bowser v. Mattler, 137 Ind. 649, 35 N. E. 701, 36 N. E. 714; Stimpson v. Gilchrist, 1 Me. 202; Mechanics' Bank v. Gilpin, 105 Mo. 17, 16 S. W. 524. But, if the assignment of the causes of action was valid, the assignee was, in fact, the real party in interest within the meaning of the Code of Alaska, for he had the legal title to the demand, and the defendant would be protected in a payment to or a recovery by him. 30 Cyc. 78, and cases there cited.

[5] The question then arises whether the assignment was legal. The allegation of the answer is:

"That the plaintiff in this action, O. D. Cochran, is an attorney at law admitted to practice in the courts in the District of Alaska. That the assignments of the claims set forth and alleged in the complaint in this action were made to the plaintiff for the purpose of bringing legal actions thereon. That the plaintiff purchased said claims for the consideration that he would prosecute in his own name the said claims for a part of the amounts recovered in said action or actions, and that the said assignments were, and are therefore, illegal and void."

It will be observed that this defense alleges only that the plaintiff took an assignment of the claims for the purpose of prosecuting the same in his own name, for which he was to receive part of the amounts recovered. The proof goes no further than to sustain those allegations. The contract between the plaintiff and the assignors recited that the latter had employed the former and his partner as their attorneys to collect certain wages due them from the appellant, and that they agreed to pay them 25 per cent. of any amount recovered by

them, either by compromise or trial in the Commissioner's Court, and that, if the cause were appealed to the District Court, they were to pay 50 per cent. of all amounts recovered. There was no provision in regard to the payment of costs, and there was no testimony on that subject except that of the appellee himself. He testified: That the claims were assigned to him to avoid multiplicity of suits, and that he paid the costs of starting the suit—

"simply as a matter of convenience. They were simply by me advanced, and were to be collected among themselves, the necessary costs, whatever they would be. They agreed amongst themselves to collect their pro rata from amongst themselves, their part of the costs. Whatever it was, they might collect something over a year ago, but that was simply the arrangement made amongst themselves, and I was merely to advance the necessary costs. Whatever I should collect of these amounts that were due these men, that amount would be paid me first. I was to put up all that was necessary for the filing of these papers, and the typewriting, etc., as I do. I will say, in 99 cases—well, I won't say that many, but I will say in 90 out of 100 causes of action—that I bring in this court. I simply go ahead and get my papers ready and file them, and pay for them. * * * Whether our suit is successful or not, they owe me the costs, and I expect each and every individual man to pay me his share if I ask him for it."

Elsewhere he testified:

"Q. Part of the consideration you said was paid in the costs advanced by you? A. No; I would not say that. Q. What would you say? A. I would say this: That I entered into this contract with these gentlemen and these claims were assigned to me, turned over to me, and I paid the costs, and that is all there is to it."

The only assignment of error relating to the question of champerty in the court below is that the court erred in charging the jury in regard to the defense above referred to, as follows:

"So far as this defense is concerned, gentlemen, the evidence is all one-sided. It has been adduced by the plaintiffs themselves. Mr. Cochran on that point is the principal witness, and then you have the contract itself providing the compensation which Mr. Gilmore and Mr. Cochran were to receive for the prosecution of the suit, and I instruct you that upon that score that, upon that question as raised by the pleadings, you should find in favor of the plaintiff. In other words, that this is not an illegal contract, and there is nothing in the law which forbids the plaintiff to sue by virtue of an assignment such as is disclosed by the evidence in this case and by the pleadings."

It is true that Act June 6, 1900, c. 786, § 367, 31 Stat. 552, providing for the civil government of Alaska, declares that there shall be in force in that district "so much of the common law as is applicable and not inconsistent with the Constitution of the United States," etc. A similar provision is to be found probably in all the acts of Congress creating civil government in the territories. While some of the English decisions hold champertous any agreement between attorney and client for the payment of contingent fees out of the money to be recovered in the action, the general common-law rule is thus expressed in 6 Cyc. 858:

"The contracts between attorney and client, by which the former agrees, in consideration of having a part of the money or thing recovered, to support at his own expense the litigation of the latter, or to indemnify the latter against costs and charges, are regarded as being within the prohibition of

the ancient common law against champerty, and also of the earlier English statutes."

It is held in nearly all the states and in the federal courts that where the attorney does not undertake to support the litigation at his own expense, or to indemnify his client against costs, and merely undertakes to render the ordinary service of an attorney, in consideration of receiving a percentage or portion of the money to be recovered, the agreement is not champertous. When Congress enacted that the common law should be in force in Alaska "whenever applicable," it should not be assumed that it was the intention to impose upon that territory a more rigid rule in regard to champerty than that which obtained in the states or than was recognized in the Supreme Court of the United States, for that court has uniformly held that an agreement to pay contingent fees for professional services of a legitimate character before the courts or departments of the government of the United States is not unlawful or against public policy. Central R., etc., Co. v. Pettus, 113 U. S. 116, 5 Sup. Ct. 387, 28 L. Ed. 915; Wright v. Tebbitts, 91 U. S. 252, 23 L. Ed. 320; Stanton v. Embrey, 93 U. S. 548, 23 L. Ed. 983; Taylor v. Bemiss, 110 U. S. 42, 3 Sup. Ct. 441, 28 L. Ed. 64. In Courtright v. Burnes (C. C.) 3 McCrary, 60, 13 Fed. 317, Judge McCrary said:

"The tendency in the courts of this country is stronger in the direction of relaxing the common-law doctrine concerning champerty and maintenance so as to permit greater liberty of contracting between attorney and client than was formerly allowed, and this for the reason that the peculiar condition of society which gave rise to the doctrine has in a great measure passed away."

Aultman v. Waddle, 40 Kan. 195, 19 Pac. 730, was a case like the case at bar, in that the cause of action was assigned to the attorney under an agreement, whereby he should proceed to collect judgments in his own name, out of which he was to pay the assignors 50 per cent. of the amount collected. The court said:

"There is a great diversity of opinion as to what constitutes champerty. A few of the courts hold to the ancient doctrine of champerty with considerable strictness. Many of them have greatly relaxed the common-law rules, making them conform more closely to the present condition of society; while some have repudiated the doctrine entirely. In this state the doctrine has been recognized, and it has been held that the defense of champerty may be maintained. A., T. & S. F. Rld. Co. v. Johnson, 29 Kan. 218. In that case the only consideration for the prosecution of the suit was a share of the judgment to be recovered, and the attorneys were to commence and carry it to an end at their own cost and expenses. The mere agreement for a contingent fee does not fall within any of the rules of champerty, nor is it generally regarded to be unlawful for an attorney to carry on a suit for another for a percentage or share of the thing to be recovered, unless he assumes the risks of the litigation by relieving or indemnifying his client from all costs and expenses of the same. Sir William Blackstone says that champerty is 'a bargain with a plaintiff or defendant campum partire to divide the land or other matter sued for between them if they prevail at law; whereupon the champertor is to carry on the party's suit at his own expense. 4 Bl. Com. 135.' The same view is taken by Mr. Chitty, who makes the carrying on of the suit by the champertee at his own expense an essential element. Chitty on Contracts, 745. This interpretation, which we adopt, is now generally accepted, and is sustained by the weight of authority."

Nor is it against public policy or champertous for an attorney to advance money necessary to carry on a litigation as needed, "when such advances are made as a loan, with the express or implied understanding or agreement for its repayment, and there is no contract of indemnity against the client's liability to pay the costs." 6 Cyc. 862. The answer in this case did not allege that the defendant in error was to pay any of the costs of the action, nor did the evidence show that such was the agreement between the parties. There was no error, therefore, in the instruction given by the court to the jury.

The judgment is affirmed.

HANFORD, District Judge (dissenting). My reason for dissenting from the foregoing opinion is that by the record it appears that the plaintiff by his pleading assumed the burden of proving his right to maintain the action as the owner by lawful assignments of the several claims for wages constituting the subject of the action. The answer made an issue as to that matter and the proof clearly sustained the answer, and did not sustain the complaint.

Whilst the Alaska Code permits the assignment of choses in action, it specifically requires all actions to be prosecuted in the name of the real party in interest. Code Civ. Proc. Alaska, § 25; 1 F. S. A. p. 58. In some of the states having a similar code, there is a further provision that, where assignments of rights of action have been made in writing, the assignee may sue in his own name, and under that provision the courts sanction the assignment of claims for collection where no consideration has been paid and the assignee merely assumes the obligation of a collecting agent, but there is no such provision in the Code of Alaska. Therefore, as the defendant's answer made an issue as to the fact of a valid assignment, the plaintiff's right depends upon proof of facts constituting a valid assignment. The evidence proves that he paid nothing for the claims, but merely took them for collection in the course of business as a practicing attorney at law, with an agreement to retain for the compensation of himself and his law partner a percentage of whatever sums might be collected by their efforts. There was no actual transfer of the actual property right in and to the claims, and the attorneys are not the real parties in interest.

Therefore the litigation in the name of the plaintiff is a violation of the statute.