## CHRIST JOHNSON v. GREAT NORTHERN RAILWAY COMPANY.[1]

February 5, 1915.

Nos. 19,090—(266).

**Champerty — advances to poor client — soliciting.**

1. It is not against public policy as champerty or maintenance, for an attorney to solicit business, or to advance money to a poor client for his living expenses during litigation, or to advise a client against the settlement of his case.

**Same — deduction of expenses from amount recovered.**

2. An agreement ·between attorney and client by which the former is to advance money for expenses and is permitted to deduct the amount thereof from the amount recovered, is not against public policy, where it does not appear that it was agreed that the client should .not be liable for the expenses in case there was no recovery.

**Same — agreement construed.**

3. Defendant settled a personal injury case with the injured person, agreeing to pay him $4,500 and to reimburse him for any sum he should be

[1] Reported in 151 N. W. 125.

---

Note.—Upon the right of an attorney at law to solicit business, see notes in 9 L.R.A.(N.S.) 282 and 33 L.R.A.(N.S.) 941.

On the question of the validity of a champertous contract, see note in 12 L.R.A. (N.S.) 606.

As to the basis for computing share of attorney entitled to a certain proportion of recovery, where the suit is compromised for a certain sum and attorney's fee. 22 L.R.A.(N.S.) 776.

compelled to pay his attorneys. Under a contract between the injured person and his attorneys he was to receive two-thirds and they one-third of any amount received in settlement. It is *held* that this amount was $4,500 plus the sum the attorneys would be entitled to under their contract, and that the attorneys were entitled to recover of defendant at least $2,000.

Petition to the district court for Lyon county by John I. Davis, Tom Davis and Ernest A. Michel, attorneys for the plaintiff, to recover from defendant $2,000, by virtue of defendant's settlement of his cause of action with plaintiff, wherein it agreed to become liable and pay to petitioners all fees or sums legally due to them as such attorneys. The matter was heard before Olsen, J., who made findings and ordered judgment in favor of plaintiffs for the amount demanded. From the judgment entered pursuant to the order for judgment, defendant appealed. Affirmed.

*A. L. Janes* and *M. L. Countryman,* for appellant.

*John I. Davis* and *Davis & Michel, pro se.*

BUNN, J.

John I. Davis and Davis & Michel were the attorneys for Christ Johnson in an action brought by him against defendant to recover for personal injuries. Before the case came to trial defendant settled with Johnson without the knowledge or consent of his attorneys. The terms of the settlement were these: Defendant agreed to pay Johnson $4,500 in cash, to reimburse him for any sum he should be compelled to pay his attorneys, to pay all hospital and doctors' bills, and to furnish him free of charge with an artificial leg when he was in condition to use one. The $4,500 was paid to Johnson, and the suit and cause of action compromised and settled.

The attorneys were employed by Johnson under a contingent fee contract by the terms of which they were to receive for their services 33⅓ per cent of any amount recovered by settlement or suit. The contract provided that any moneys advanced by the attorneys for expenses were to be deducted from the gross amount received by settlement or suit. It also provided that no settlement was to be made without the consent of Johnson.

This proceeding was by a complaint or petition filed by the attor-

neys, and was entitled in the main action. The petition set forth in detail the contract between Johnson and the petitioners, the commencement of the personal injury action, the settlement thereof, and its terms. Fraud was also alleged. Judgment against defendant for $2,000 and interest was demanded. Defendant filed an answer to the petition which, after admitting the commencement of the action and the settlement, proceeded to charge that petitioners were and had been for a long time engaged in "the business and conspiracy of unlawfully stirring up strife and contention and vexatious and speculative litigation between this defendant and persons having personal injury claims against this defendant, and in discouraging and preventing the amicable compromise of said claims without litigation;" that petitioners in soliciting and obtaining claims against defendant traveled from place to place and employed for such purpose a large number of laymen as agents and solicitors; that for the purpose of obtaining cases against defendant they have unlawfully paid to claimants large sums of money for the support and maintenance of claimants during the litigation; that they pay all costs and disbursements connected with litigation on the understanding with claimants that the latter, in case there is no recovery, shall not be liable therefor, and that petitioners will reimburse themselves, for the money so advanced, out of the proceeds of the litigation. The answer further charged petitioners with preventing the amicable settlement of claims by advising all claimants that they are entitled to sums of money greatly in excess of the actual damages suffered, thus unlawfully fomenting litigation against defendant. Thus far the charges made were general in their nature, and had no reference to this particular case. The answer then proceeded to allege that petitioners solicited the claim of Johnson, wrongfully persuaded him not to make an amicable settlement, by promising to obtain a recovery largely in excess of compensation, to advance large sums for his living expenses, and to pay all costs and expenses of the litigation, and to reimburse themselves solely out of the amount recovered from defendant. It was alleged that, had it not been for these representations and promises, the claim would have been amicably settled without suit for substan-

tially the amount actually paid; that the unlawful conduct of petitioners "in this case and the whole course of unlawful conduct of the petitioners in soliciting and obtaining personal injury cases against this defendant and other corporations has resulted in constant, needless strife and contention between this defendant and its employees and other claimants, and has resulted in unnecessary vexatious and speculative litigation much to the detriment of this defendant and greatly to the prejudice of justice." In conclusion, the answer alleged that by reason of the unlawful and champertous conduct of petitioners, they have no lien upon the cause of action settled by defendant, and further that their contract with Johnson was null and void, for champerty and maintenance and as against public policy. The reply was a general denial.

The court, on petitioners' motion, made an order vacating the settlement, for the purpose of hearing and determining what fees should be paid by defendant to the attorneys for plaintiff. This matter was heard by the trial court without a jury. After petitioners established their contract with Johnson, the fact of the settlement, and that they had received no compensation, defendant called each of the petitioners for cross-examination, and attempted to prove by him the allegations of its answer. The court sustained objections to practically all questions asked and to numerous offers to prove the facts alleged, and the case was submitted for decision with no evidence in support of the defense. The court subsequently filed its decision finding the facts in favor of petitioners, and that the "other allegations" of the pleadings were untrue, and ordering judgment in favor of the petitioners and against defendant for $2,000 and interest.

The questions involved are these: (1) Did the court err in excluding the evidence offered by defendant in support of allegations of its answer? (2) Did it err as to the amount petitioners are entitled to recover?

1. As to the ruling in sustaining objections to questions and offers relating to the conduct of petitioners in general, and in other cases, it is clear that these matters were wholly irrelevant to the issue—petitioners' right to a lien in this particular case.

The facts offered to be proved that related to petitioners' conduct in the Johnson case were substantially these: (1) That they solicited Johnson's case; (2) that they paid money to Johnson for his support during the pendency of the litigation; (3) that they advised him not to settle the case.

Is conduct of this kind so against public policy that the courts will deny to attorneys guilty of it their statutory lien on the client's cause of action? We freely concede that champerty or maintenance in a case may be ground for refusing the aid of the court in compelling compensation to the guilty attorneys. But is it champerty or maintenance or against public policy for an attorney to solicit business; to pay money to a poor client for his living expenses during the litigation, or to advise him against a settlement of his case? We may have our individual opinions on these propositions as questions of good taste or legal ethics. But in the absence of some statute we are unable to hold that it is illegal or against public policy for an attorney to solicit a case. See concurring opinion of Justice Canty in Gammons v. Johnson, 76 Minn. 76, 78 N. W. 1035. The practice of advancing money to the injured client with which to pay living expenses or hospital bills during the pendency of the case and while he is unable to earn anything, may in a sense tend to foment litigation by preventing a settlement from necessity, but we are aware of no authority holding that it is against public policy, or of any sound reason why it should be so considered.

It is generally held that a person, whether an attorney or a layman, who furnishes assistance by money or otherwise to a poor man to enable him to carry on an action is not guilty of maintenance. 6 Cyc. 865, and cases cited. Northwestern S. S. Co. v. Cochran, 191 Fed. 146, 111 C. C. A. 626. It is not against public policy for an attorney to loan his client money to enable him to carry on the suit. This is the utmost extent to which the offer of evidence went, and it was not error to sustain the objection.

As to the offer to prove that the petitioners advised Johnson against settling the case, representing that he was entitled to heavy damages, we know of no reason why this should be held contrary to public policy. Johnson did not agree not to make a settlement

128 M.—24.

without the consent of his attorneys; indeed the contract expressly provides that the attorneys shall not settle without his consent. The law favors the amicable settlement of controversies, and it is wrong for a lawyer to discourage settlements out of personal motives. But there was no offer to prove any such conduct in this case; indeed the evidence shows pretty clearly that the petitioners advised and attempted to procure a settlement.

2. Defendants argue that an agreement by an attorney to pay the expenses of litigation and reimburse himself from the proceeds of the action is void. But the contract in this case only provided that the attorneys might retain out of the amount recovered any moneys advanced for expenses. There was no offer to show an oral agreement that the attorneys were to support the litigation at their own expense or to indemnify the client against costs. The argument therefore fails, and the cases cited have no application. As before stated, an agreement to loan the client funds with which to carry on the suit or to maintain himself during its pendency, is not regarded as *per se* opposed to public policy. It is only when the attorneys are to ultimately stand the costs, or when the client is indemnified from liability for them in case of no recovery, that the law declares the arrangement void. Huber v. Johnson, 68 Minn. 74, 70 N. W. 806, 64 Am. St. 452; 6 Cyc. 858, 865, and cases cited.

After a careful reading of the record, we find nothing in the evidence excluded that was material—nothing that would have justified the trial court in refusing relief to petitioners. Nothing can be added to what has been said in prior decisions of this court on the subject of champerty and maintenance. Huber v. Johnson, 68 Minn. 74, 70 N. W. 806; Gammons v. Johnson, 69 Minn. 488, 72 N. W. 563, 76 Minn. 76, 78 N. W. 1035; Gammons v. Gulbranson, 78 Minn. 21, 80 N. W. 779; Holland v. Sheehan, 108 Minn. 362, 122 N. W. 1, 23 L.R.A.(N.S.) 510, 17 Ann. Cas. 687. These cases in no way touch the case at bar. There was no illegality in the written contract between Johnson and the petitioners, and no offer to prove any facts that would have made the contract illegal as against public policy.

3. Defendant insists that the amount of the recovery, if peti-

tioners were entitled to anything, should have been $1,500 instead of $2,000. This is on the theory that the recovery by Johnson was $4,500, and that under the contract he would have been liable to his attorneys for but one-third of this sum. But the contract of settlement was that defendant was to pay Johnson $4,500, and in addition to reimburse him for any sum he should be compelled to pay his attorneys. (We do not add the hospital bills or the wooden leg.) Under the contract between the attorneys and their client, he was to receive two-thirds and they one-third of the amount received or recovered of defendant. The $4,500 paid to Johnson was his two-thirds of the total settlement. The one-third of the attorneys would be $2,250. The court allowed $2,000, which was the sum demanded, and we think that defendant has no ground for complaint. The case of Schmitz v. South Cov. & Cin. St. Ry. Co. 131 Ky. 207, 114 S. W. 1197, 18 Ann. Cas. 1114, also reported in 22 L.R.A.(N.S.) 777, does not seem logically sound, and is criticised in the note thereto in L.R.A. The question is somewhat perplexing, but we think it is fairly clear that the total amount of the settlement was not alone the $4,500 paid to Johnson, but that sum plus the amount he had agreed to pay his attorneys.

Order affirmed.