## C. A. PARKER AND ANOTHER v. H. E. FRYBERGER.[1]

June 3, 1927.

No. 25,754.

**What questions are res judicata on second appeal from denial of alternative motion.**

1. Questions involved and directly decided on an appeal from a judgment rendered non obstante veredicto are res adjudicata on a subsequent appeal from an order denying a new trial.

**What questions may be raised and reviewed on second appeal.**

2. On an appeal from the order the propriety of the verdict rendered and the amount thereof may be questioned, also whether the proof is so deficient that it was an abuse of judicial discretion not to grant a second trial. Rulings, instructions, and refusals to instruct to which exceptions have been preserved and on which errors are assigned are likewise for review.

**Verdict and denial of new trial sustained.**

3. In the instant case the evidence is held sufficient to support the verdict, and no abuse of discretion in not granting a second trial appears.

**Unnecessary for plaintiffs to prove their work was proximate cause of defendant's fees.**

4. Under the contract found it was not necessary for plaintiffs to prove that their work was the proximate cause of the fees defendant obtained.

**Plaintiffs' contract not illegal.**

5. The fact that defendant had contracts with his clients for contingent fees did not establish or tend to establish that plaintiffs' contract with defendant was illegal or champertous.

**Refusal of requests and denial of new trial.**

6. There were no errors in refusing requested instructions or in the charge of which defendant can complain, nor in the denial of a new trial for newly discovered evidence.

[1]Reported in 214 N. W. 276.

Appeal and Error, 4 C. J. p. 1093 n. 77; p. 1100 n. 17; p. 1104 n. 39, 40 New; p. 1105 n. 43; p. 1108 n. 66; p. 1111 n. 84.

Attorney and Client, 6 C. J. p. 740 n. 2.

Chattel Mortgages, 11 C. J. p. 241 n. 9.

Contracts, 13 C. J. p. 763 n. 34 New; p. 775 n. 91.

New Trial, 29 Cyc. p. 832 n. 60; p. 1009 n. 54.

See 2 R. C. L. 1039; 1 R. C. L. Supp. 685; 4 R. C. L. Supp. 135; 5 R. C. L. Supp. 122; 6 R. C. L. Supp. 118; 5 R. C. L. 276; 1 R. C. L. Supp. 1354; 6 R. C. L. Supp. 299.

Defendant appealed from an order of the district court for Hennepin county, Leary, J., denying his motion for a new trial. Affirmed.

*H. E. Fryberger*, pro se.

*George R. Smith, Edward J. Callahan, H. Stanley Hanson,* and *William B. Movery,* for respondents.

HOLT, J.

There was a verdict for plaintiffs and a motion in the alternative for judgment non obstante or a new trial. Judgment was ordered and entered, but was reversed on plaintiffs' appeal therefrom. Parker v. Fryberger, 165 Minn. 374, 206 N. W. 716. This left the motion of defendant undecided so far as concerned a new trial. It was thereafter considered by the court below, and an order entered denying the same. From that order defendant appeals.

That the complaint as amended stated a cause of action, and that the evidence in support of the verdict was such that judgment notwithstanding could not stand, must be considered settled beyond dispute by the former appeal. Questions involved and directly decided in that appeal are now to be considered res adjudicata. Rarely do courts on a second appeal reconsider questions determined in the first. We see no good reason for any re-examination of the questions of fact or law decided in the previous appeal. The basis of that decision was that the contract sued on and which the jury found defendant made with plaintiffs was legal, and that the learned court below erred in holding it illegal as being against public policy. This court in the first appeal also determined that it was not neces-

sary to submit to the jury whether the contract of employment required plaintiffs to solicit clients for defendant, and that the submission of such a question was not saved by the record for use upon the motion for a new trial. This point was in answer to an argument in the trial court's memorandum attached to the order granting judgment non obstante. In passing it may be said this (though not necessarily involved on the former appeal) is so clearly true upon the record that nothing further need be said.

While in the former appeal it was directly decided that there was evidence to sustain the verdict so that therefore judgment non obstante could not be rendered, we nevertheless do hold that the propriety of a verdict for plaintiffs and the amount thereof may be raised on defendant's subsequent appeal from the order denying a new trial; likewise such rulings, in the course of the trial, to which defendant objected and which are properly saved in the record and assigned as errors here.

The first proposition is that the evidence does not justify the verdict or, at any rate, is so deficient in substance that it was an abuse of judicial discretion not to grant a new trial. The action was upon an alleged express contract for services to be rendered and information furnished and to be furnished defendant to aid him in asserting claims as an attorney for persons defrauded as stockholders or as noteholders of the Dan Patch Railway Corporation by the chief executive officers thereof, plaintiffs to receive as their compensation one-third of the fees defendant should obtain therefrom. For a further statement of the issues see Parker v. Fryberger, 165 Minn. 374, 206 N. W. 716. The chief contention now is, and on the trial was, that even though an employment could be found in relation to the stockholders' suit, plaintiffs were neither employed nor requested to do anything in the noteholders' suit, and never did render any service or give any information of any benefit in that matter. The court's instruction was explicit that plaintiffs' employment and work must include both matters in order to find a verdict in their favor. The question then is, was there any evidence upon which the jury could predicate employment, information, and services relative to the Meeker suit, or the noteholders' interests?

There seems to have been. Plaintiffs testify that defendant was told, at about the first interview when both of them were present, that one Mason, an officer of the Dan Patch Line, could furnish information of great value, and defendant admits that he received such from Mason relative to the noteholders' suit, but he claims that that was only obtained after Mason had become defendant's client and more than two years after plaintiffs' alleged contract was made. This, however, presented questions of fact for the jury. Mason was not a witness.

On this record, it must be said that defendant is not in a very good position to claim that there is no connection between the two suits. At about the time the Meeker suit was begun an amended complaint was served in the Jacobson or stockholders' suit. And both actions appear to have gone hand in hand to one lump settlement. No written settlement was introduced showing what noteholders or what stockholders participated in the money received. That some of the proceeds went to the latter defendant admits. The jury could find that the information plaintiffs agreed to furnish and did furnish was made use of by defendant in both matters and that the result to him was fees to the amount of $15,000 with interest. To be sure, there were objections to the introduction of any testimony as to the employment and services in respect to the Meeker suit under the amended complaint, but evidently defendant anticipated the scope of the complaint in that respect, for in his answer thereto he alleges that plaintiffs rendered no services in reference to that action.

While it seems improbable that an attorney should make so liberal a contract as this with persons having such limited experience in making investigations and gathering information as plaintiffs had, there are matters in the record which the jury could consider in explanation thereof. Defendant had an established reputation as a champion of minority stockholders in controversies with majority stockholders or corporate officers, also as being very effective with claims based on fraud and deceit. One of plaintiffs had been in the employ of the Dan Patch Line in a prominent position, and presumably had knowledge of the inside management of the corpora-

tion and therefore might possess information which defendant deemed of great assistance and would bring him in touch with others from whom more could be had. The jury could also consider what took place between the parties hereto subsequent to the settlement of the suits when, according to one of plaintiffs, defendant made two part payments of $250 to him, and later informed plaintiffs that he had finally collected the money and that they could come to his office and get theirs. This was all flatly denied by defendant, but the dispute made the matter for the jury.

It is argued that the contract was too indefinite, its performance too uncertain and, at any rate, that there is a failure to prove that the settlement was the proximate result of plaintiffs' services. Cases for real estate agents' commissions, for the recovery of damages for tort, and for damages, general and special, for breach of contracts are cited. We think these are not in point. Plaintiffs' employment did not stipulate that their services and information should be the sole means to bring about the fees. It was contemplated that defendant's skill and ability should be the large factor in attaining results. Defendant had the right to direct the efforts of plaintiffs, and could use or not use as he saw fit the information they might gather. We do not think the employment was so indefinite as to be incapable of identification, or the proof of performance so vague that the jury could not determine the matter. Among other cases, defendant cites Masline v. New York N. H. & H. R. Co. 95 Conn. 702, 112 Atl. 639, where the court held that "information" which is common knowledge does not furnish a consideration for an agreement to pay money therefor. It is not in point here. The trial court was justified in holding the evidence sufficient to support the verdict, and we find no abuse of judicial discretion in not granting a second trial.

The court gave defendant's fourth request, reading:

"If the plaintiffs knew or had notice of the fact that the contracts of the defendant Fryberger with his clients were contingent upon the success of the litigation, your verdict will be for the defendant."

We think this more favorable to defendant than he was entitled to. However, the trial court concluded that the question presented to the jury by defendant's requested instructions should be answered by a special verdict and, of his own motion, submitted it. The question was this:

"Did the plaintiffs or either of them know when contract was made with defendant that his fees were to be contingent?" The jury answered in the negative.

There was no objection to the submission of the special verdict at the trial, but in the motion for new trial and here objection is raised. In view of the instruction requested and given, there can be no merit in the objection to the submission of the special verdict. At any rate, the trial court deeming it important in view of some question of law which might depend thereon could well submit it, since defendant could in no way be prejudiced. However, whether or not defendant had contingent contracts with his clients had no particular bearing on plaintiffs' right of recovery. Obviously defendant did not admit or claim that the contracts with his clients were tainted with illegality. Nor has it been held that an attorney may not lawfully take a client's cause upon a contingent fee basis. To make it champertous there must be more than a contingent fee, such as an agreement to pay the costs. Johnson v. G. N. Ry. Co. 128 Minn. 365, 151 N. W. 125, L. R. A. 1917B, 1140. Even if the attorney Sheehan had made contracts with the clients secured by Holland to take their case for a fixed fee, win or lose, still the contract between Holland and Sheehan no doubt would have met the same fate as it did in Holland v. Sheehan, 108 Minn. 362, 122 N. W. 1, 23 L. R. A. (N. S.) 510, 17 Ann. Cas. 687.

The foregoing conclusion disposes of defendant's seventh request for instruction, to the effect that if a layman does some work for a lawyer in a litigation which the lawyer has on a contingent fee the layman may not recover the agreed price for his services. The eleventh and sixteenth instructions were too broad, for it was for the jury to say whether or not plaintiffs' services included the noteholders' interests—the Meeker suit. The thirteenth, fourteenth, and

fifteenth were not correct statements of law in that each assumed that, if defendant entered [into] an agreement in any noteholder's or stockholder's claim, embraced in the settlement, to handle it on a contingent fee, and this came to the knowledge of plaintiffs, their rendering thereafter any services under the contract with defendant would vitiate and make the same illegal and champertous so that no recovery could be had. In addition to what is hereinbefore said, the former decision sufficiently points out why plaintiffs' contract with defendant cannot be held illegal upon their version; and of course it cannot upon defendant's, for he denied any contract.

Defendant attempts to raise an assignment of error entitling [him] to a new trial in respect to the $250 received by one of plaintiffs. But we find no place in the record where the trial court was requested to submit the item to the jury or to reduce the verdict because payment thereof was admitted in the complaint. In fact defendant denied in his answer that it was a payment on plaintiffs' cause of action, and asserted it was a loan, but pleaded it neither as a counterclaim nor as a set-off.

The part of the charge excepted to in the nineteenth error specified in the motion for a new trial merely states the claims of plaintiffs, and we see nothing wrong or misleading therein. What has already been said herein disposes of the assignment of error based upon the twenty-fourth specification in the motion for a new trial touching a part of the court's charge.

The learned court below saw no merit in the request for a new trial because of newly discovered evidence. The awarding of a new trial on that ground is largely vested in the discretion of the trial courts, and we can see no abuse of judicial discretion in the action of the court in the instant case.

The order is affirmed.