## FRYBERGER v. PARKER et al.

Circuit Court of Appeals, Eighth Circuit.
September 14, 1928.

No. 8233.

H. E. Fryberger, of Minneapolis, Minn. (D. E. Bridgman, of Minneapolis, Minn., on the brief), for appellant.

Edward J. Callahan, of Minneapolis, Minn. (George R. Smith, William B. Movery, and Joseph A. Kozlak, all of Minneapolis, Minn., Frank A. R. Mayer, of St. Paul, Minn., and William J. Hughes, Jr., of Washington, D. C., on the brief), for appellees.

Before STONE and LEWIS, Circuit Judges, and MARTINEAU, District Judge.

LEWIS, Circuit Judge. Charles A. Parker and Frank B. Lewis recovered judgment against H. E. Fryberger in a law action in the State district court for Hennepin County, Minnesota. Thereupon Fryberger filed his bill in the court below wherein he sought the writ of injunction to restrain Parker and Lewis from collecting the judgment. The parties are all citizens and residents of Minnesota. Giving to the bill a broad interpretation, it alleges that Minnesota through its State district court in which the Parker and Lewis case was tried, and the State Supreme Court to which it was twice taken and considered, is threatening to deprive Fryberger and will deprive him of his property without due process of

law, and deny him the equal protection of the laws in violation of the guaranties of the Fourteenth Amendment; and on this ground jurisdiction of the Federal court was invoked. A motion to dismiss the bill was sustained and plaintiff brings this appeal. A brief opinion filed by the two district judges who heard the motion expresses the reasons for their action, which in substance are these: (1) The State courts had jurisdiction of the subject-matter and the parties in the action brought by Parker and Lewis against Fryberger; (2) the Federal District Court has not been granted power to review and correct errors, if any, committed by State courts; (3) the bill and the whole of it is directed to errors of those courts in an action in which they had full and complete jurisdiction and their alleged errors cannot be reviewed by a Federal court until Congress has invested it with that power within constitutional limits.

A statement of the facts pleaded in the bill ought to be sufficient to demonstrate the soundness of the ruling. The bill has attached to it the pleadings in the action brought by Parker and Lewis against Fryberger, and by reference those pleadings are made a part of the bill. Their complaint alleged in substance that Mr. Fryberger was a practicing attorney at Minneapolis, that on or about July 1, 1915, he instituted a stockholders' suit in the name of one Hodgeman against a named electric railway company, other corporations and individuals, said electric railway being financially unable to meet its obligations or in imminent danger of becoming so disabled, that said company was indebted to various persons in various amounts, evidenced by promissory notes; that on or about said July 1, 1915, Fryberger employed Parker and Lewis to secure such evidence as they were able to do concerning the affairs of said electric company and its liabilities on notes and to secure the co-operation of such stockholders as were desirous of joining Hodgeman in his suit, and Fryberger promised and agreed with Parker and Lewis that for such services to be rendered by them he would pay them a sum equal to one-third of whatever fees and emoluments he should receive for his services in protecting the rights of stockholders and note-owners, and pursuant to said agreement and in reliance thereon they did furnish Fryberger all of the evidence and information which they were able to secure relative to the rights of stockholders and note-owners; that said services were rendered and information furnished to the defendant at his request between July 1, 1915, and February 1, 1921, that in every respect they fully performed all the requirements of their agreement with Fryberger on their part to be performed. The complaint then sets out in some detail the services claimed to have been rendered and the information furnished by Parker and Lewis to Fryberger. Much but not all the information so claimed to have been furnished appears to have been concerning the dereliction of duty and mismanagement of those who had charge of the electric railway and its finances. In March, 1918, Fryberger brought suit for one or more note-owners. It was alleged by Parker and Lewis that Fryberger prosecuted these suits to a compromise and settlement from the information and evidence furnished to him by them, that a settlement was made on or about February 1, 1921, and Fryberger received in the settlement $16,800 for his services and thereupon became indebted to Parker and Lewis in the sum of $5,600, for which they asked judgment. Fryberger answered the complaint. He put in a general denial. He alleged on information and belief that all of the information furnished to him by Parker and Lewis was based on rumor, suspicion and hearsay and none of it was susceptible of proof by credible or reputable witnesses or otherwise; he denied that he agreed to pay Parker and Lewis or either of them any part of the fees which he might receive in the litigation; he alleged that they solicited such an agreement from him but he refused to consent thereto and informed Parker that such an agreement would be illegal and void as opposed to public policy; he denied that Lewis ever at any time furnished him with any information whatsoever, he denied that either of them furnished any information in reference to or in connection with the suit brought in behalf of the note-owners and alleged that neither of them had any knowledge of that litigation or the matters therein involved until after the settlement, which he alleged was made in the month of February, 1919; he alleged that the settlement was made on condition that all of the litigation be dismissed. He also pleaded a misjoinder of parties plaintiff, set up the six-year statute of limitation, and as a special defense alleged that neither Parker nor Lewis had been admitted to practice law and that the alleged agreement was illegal and void as against the public policy of the State. To this answer Parker and Lewis replied denying all allegations of new matter. That

case went to trial before a jury and, as appears from the bill of complaint in this suit, a motion for a directed verdict in favor of Fryberger at the close of the testimony was denied. The jury returned a verdict in favor of Parker and Lewis. Thereupon Fryberger moved for judgment notwithstanding the verdict and the district judge sustained the motion on the ground that the contract set up by Parker and Lewis was against public policy. From that order Parker and Lewis appealed to the Supreme Court of Minnesota. That court reversed the order of the district judge. It said (Parker et al. v. Fryberger, 165 Minn. 374, 206 N. W. 716):

"Upon an appeal from an order as here involved the only question presented is whether the evidence is sufficient to sustain the verdict [citing Minnesota cases]. The answer to this inquiry must be in the affirmative. It follows that the order of the trial court for judgment notwithstanding the verdict must be and is reversed. This leaves the motion for a new trial pending and awaiting disposition by the trial court."

It was further held that the facts did not show that the contract was illegal. The district court then overruled Fryberger's motion for a new trial and he appealed from that order. Parker et al. v. Fryberger, 171 Minn. 384, 214 N. W. 276. On that appeal the Supreme Court said:

"The question then is, Was there any evidence upon which the jury could predicate employment, information, and services relative to the Meeker suit, or the note-holders' interests? There seems to have been. * * * No written settlement was introduced showing what note-holders or what stockholders participated in the money received. That some of the proceeds went to the latter, defendant admits. * * * It is argued that the contract was too indefinite, its performance too uncertain, and, at any rate, that there is a failure to prove that the settlement was the proximate result of plaintiffs' services. Cases for real estate agents' commissions, for the recovery of damages for tort, and for damages, general and special, for breach of contracts, are cited. We think these are not in point. Plaintiffs' employment did not stipulate that their services and information should be the sole means to bring about the fees. It was contemplated that defendant's skill and ability should be the large factor in attaining results. Defendant had the right to direct the efforts of plaintiffs, and could use or not use as he saw fit the information they might gather. We do not think the employment was so indefinite as to be incapable of identification, or the proof of performance so vague that the jury could not determine the matter."

The order overruling Fryberger's motion for a new trial was affirmed, and thereafter on August 16, 1927, the district court entered its judgment on the verdict of the jury.

The bill of complaint further alleges that about the year 1921 Parker and Lewis entered into a conspiracy to defraud the complainant of his property and that pursuant to the conspiracy they commenced the action in the State district court in that year. The alleged conspiracy seems to have consisted in the bringing of the action against Fryberger and in the allegations of the complaint therein. But there is no allegation that Fryberger discovered the conspiracy and facts by which he is enabled to prove it after the trial of the action in the State court. He alleges in the bill that the allegations of the complaint filed in the State court were in their essence sham, fraudulent and fabricated. He alleges, argumentatively, that Parker and Lewis could not "in the nature of things" have furnished any information to complainant about the cause of action of any note-holder, that plaintiffs failed in the State court to establish "even a shadow" of a cause of action, that he moved for a directed verdict on that ground, which was denied and the case submitted to the jury over his objections; he attacks both opinions of the State Supreme Court, alleges that he filed a petition for rehearing after the first opinion was rendered and called attention to the fact that certain statements in that opinion were contrary to the record, that his petition for rehearing was denied and the case remanded to the district court; he alleges that neither opinion made any reference to the basic facts, that the Minnesota Supreme Court had no jurisdiction to make such a decision and that the same was harsh, oppressive and amounted in legal effect to the confiscation of complainant's property without due process of law, that the judgment entered in the State court against him is not a mere irregularity but is extra-judicial and void and not res judicata; "that by reason of the facts herein set forth, a Federal question is involved and that by reason of the fact that the proceedings adopted by said Parker and Lewis violate the provisions of the Fourteenth Amendment of the United States Constitu-

tion and deprived complainant of his property without due process of law." It is then prayed that the writ of injunction be granted permanently enjoining and restraining Parker and Lewis from causing execution to be issued out of the district court of Hennepin County on said judgment so recovered by them. By amendment to the bill Fryberger sought by reference to make a part of it the record and supplemental record on the first appeal to the State Supreme Court, the brief filed by Fryberger therein, Fryberger's petition for rehearing therein, his motion for a new trial in the State district court, the record on the second appeal, complainant's brief in chief and his reply brief on that appeal, and his petition for rehearing therein. Thus ends the substantive allegations of the bill filed in the Federal court.

Could there be anything clearer than that the whole purpose of the bill is to have the Federal court act as a reviewing court to correct the alleged errors of the State tribunals? It scarcely needs argument to demonstrate the fallacy of appellant's contention. The allegations that appellant's property is about to be taken without due process of law under the judgment in the State court and that he will thereby be denied equal protection of the laws are mere conclusions of the pleader; and the facts exhibited on the face of the bill show they are groundless. In Tracy v. Ginzberg, 205 U. S. 170, 27 S. Ct. 461, 51 L. Ed. 755, it was claimed that defendant held certain moneys for which he was accountable to plaintiff. The courts of Massachusetts in which the action was brought decided against the plaintiff. He insisted that the judgment of the Supreme Court of that State had deprived him of his property without due process. In answer to that the Supreme Court of the United States said:

"The court, proceeding entirely upon principles of general and local law, and giving all parties interested in the question an opportunity to be heard, decided that plaintiff had no right to that money. The decision of a State court, involving nothing more than the ownership of property, with all parties in interest before it, cannot be regarded by the unsuccessful party as a deprivation of property without due process of law, simply because its effect is to deny his claim to own such property."

▊▊ Notice and opportunity to defend constitute due process of law. The Federal Constitution does not require that the proceedings in a State court shall be according to any particular mode. If timely notice has been given to a defendant and he has had an opportunity to defend against a charge or claim and the trial is thereafter had in accordance with a regular course of procedure under the State practice the requirements of the Fourteenth Amendment have been complied with. Simon v. Craft, 182 U. S. 427, 21 S. Ct. 836, 45 L. Ed. 1165. The district court in disposing of the motion to dismiss relied principally upon Rooker v. Fidelity Trust Co., 263 U. S. 413, 44 S. Ct. 149, 68 L. Ed. 362, and it is applicable here and controlling. Rooker brought his suit in the United States District Court to avoid a judgment that had been rendered between the same parties in the State court of Indiana, which was affirmed on appeal to the Supreme Court of that State. It was claimed, however, that the constitutional question was presented in the State litigation and wrongly decided adversely to the rights of the plaintiff to the bill in the Federal court. Even so, it was held to be within the province and duty of the State courts to decide those questions and their decision, whether right or wrong, was an exercise of jurisdiction, and a wrong decision did not render the judgment void, but merely left it open to reversal or modification in an appropriate and timely appellate proceeding. After noting that the district courts possess only original jurisdiction the court said:

"Some parts of the bill speak of the judgment as given without jurisdiction and absolutely void; but this is merely mistaken characterization. A reading of the entire bill shows indubitably that there was full jurisdiction in the state courts and that the bill at best is merely an attempt to get rid of the judgment for alleged errors of law committed in the exercise of that jurisdiction."

In principle Fayerweather v. Ritch, 195 U. S. 276, 25 S. Ct. 58, 49 L. Ed. 193, is like the Rooker Case. In Nougué v. Clapp, 101 U. S. 551, 25 L. Ed. 1026, it is sufficient to quote the syllabus:

"The Circuit Court of the United States cannot revise or set aside the final decree rendered by a State court which had complete jurisdiction of the parties and subject-matter."

▊▊ Moreover, appellant is here seeking by bill in equity to review alleged errors of the State courts in a law action. The gravamen of his bill and the burden of his argument are that there was no proof at the trial in the State court sustaining the verdict of the jury. By his motion for a direct-

ed verdict he made that inquiry an issue of law. The trial court and the appellate court decided that issue against him. He now presents that issue to a Federal court in equity and asks the chancellor to read the record of the case made in the State court, to consider the proof in that case and decide whether it supports the verdict of the jury. Clearly, the Seventh Amendment prohibits the inquiry. Conceding the power of Congress to give appellate jurisdiction to Federal courts over the adjudications of State courts, no such power as here invoked by the bill could be conferred on a court of equity. Supreme Justices v. Murray, 9 Wall. 274, 19 L. Ed. 658; Chicago, Burlington & Quincy Railroad Co. v. Chicago, 166 U. S. 226, 243, 17 S. Ct. 581, 41 L. Ed. 979; Maxwell v. Dow, 176 U. S. 581, 598, 20 S. Ct. 448, 494, 44 L. Ed. 597.

The bill does not contain the usual and necessary allegations of fact—fraud, accident or mistake—as grounds of relief from the judgment of another court. National Surety Co. v. State Bank (C. C. A.) 120 F. 593, 61 L. R. A. 394; Wells Fargo & Co. v. Taylor, 254 U. S. 175, 185, 186, 41 S. Ct. 93, 65 L. Ed. 205. But with that we are not concerned because in this bill jurisdiction is rested only on alleged violations of Constitutional rights, which, as we have attempted to show, is wholly without merit. The District Court did not err in dismissing the bill. This court also is without jurisdiction and the motion of appellees to docket and dismiss the appeal is sustained. The mandate may issue forthwith.